## The Merrimac Mining Company *versus* Levy.

1. By the act of subscribing to the capital stock of an incorporated association, each associate undertakes to raise his proportion of the capital as it may be called for by the directors.

2. The law authorized the directors to call in the subscription, this ordinarily implies, a corresponding duty to pay.

3. The articles of association under the law, contemplated a substantial capital for defined purposes; this was both to carry out the object of the corporation and for the protection of creditors, and therefore created a personal liability for the subscriptions.

4. A purchaser from an original subscriber is substituted to his obligations as well as his rights, and, being accepted by the corporation, a privity is established between them.

5. Canal Co. *v.* Sansom, 1 Binn. 70, and Palmer *v.* Ridge Mining Co., 10 Casey 288, criticised.

6. In a suit arising under a charter of another state, the decisions in that state are the best evidence of the rights and duties of stockholders under it.

February 4th 1867.    Before WOODWARD, C. J., THOMPSON, STRONG and READ, JJ.    AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia.*

In this action, which was commenced November 4th 1865, by the Merrimac Mining Company of Lake Superior to the use of their assignees for the benefit of creditors against David C. Levy, a case was stated showing the following facts:—

The plaintiffs are a corporation under an act of the legislature of Michigan, " to authorize the formation of corporations for mining, &c., and for manufacturing purposes," approved February 5th 1853, and supplements known as the " General Mining Laws of Michigan." The first meeting of the board of directors of the corporation was held February 23d 1864.

On the 30th day of March 1864, the defendant owned 351 shares, and continued to hold not less than 200 shares up to the 4th of October 1865 or thereabouts, when his stock was sold, as hereinafter set forth.

On the 27th of March 1865, there had been paid in upon said stock $5.50 a share, and on that day the directors, in accordance with all the provisions of said act and supplements and the by-laws of the corporation, called for an instalment of $1 upon every share, of which due notice was given to defendant, but he refused to pay the instalment, and the plaintiffs, in pursuance of the provisions of said act, supplements and by-laws, and with the requisite notice to the defendant, advertised and sold his stock on the 4th day of October 1865, for 5 cents a share, leaving 95 cents a share of the instalment still unpaid.

If the defendant is liable, in the opinion of the court, to pay to the plaintiffs the balance of the instalment not paid by the proceeds of sale of stock, the same being 95 cents a share, then

judgment to be entered for the plaintiffs for the sum of $190; if otherwise, judgment to be entered for defendant.

The court below entered judgment for the defendant, which was assigned for error.

*C. Sergeant* and *C. Gilpin*, for plaintiffs in error, cited Carson *v.* Arctic Mining Company, 5 Mich. R. 288; Merrimac Mining Company *v.* Bagley, in Supreme Court of Michigan, not reported; Hartford and N. Hav. Railroad *v.* Kennedy, 12 Conn. 499; Herkimer *v.* Small, 21 Wend. 273; Id. 296; Palmer *v.* Ridge Mining Co., 10 Casey 288; Small *v.* Herkimer, 12 Comstock 530.

*G. W. Biddle*, for defendant in error, cited Canal Company *v.* Sansom, 1 Binn. 70; Palmer *v.* Ridge Mining Company, 10 Casey 288.

The opinion of the court was delivered, February 14th 1867, by

STRONG, J.—The plaintiffs are a Michigan corporation, and this suit is brought to recover from the defendant, who is a transferee of stock from an original subscriber, the instalments on the stock called since he became a stockholder. In Carson *v.* The Arctic Mining Company, 5 Michigan 288, it was ruled that one who had signed the original articles of association, and thus subscribed to the stock of a mining company organized under a law similar to that under which these plaintiffs are organized, is liable personally for instalments called while he remains a stockholder. And in a later case, decided by the same court, The Merrimac Mining Company *v.* Bagley, it was held, that one who had purchased stock in the company from an original subscriber, is liable to pay such instalments as are called while he owns the stock. In this latter case the law of incorporation was the same as that of the company under which the defendant held his stock. Indeed, the plaintiffs in that case and this are the same. If the decision of the Michigan court is a correct exposition of the law, the judgment in this case should have been for the plaintiffs.

We do not propose now to spend time in showing that were the defendant an original subscriber to the stock of the plaintiffs, he would be personally liable for the instalments called. It is quite plain, from the articles of association, taken in connection with the general mining law of Michigan, that he would. It is true, the articles contain no express promise of the subscribers to pay instalments as called, but the stock is fixed at twenty thousand shares of $25 each. By the act of subscribing, each associate undertook to raise his proportion of the capital, as it might be called for by the directors—and the directors were, by the act of the legislature, authorized to call in the subscription. A right to call, ordinarily implies a corresponding duty to pay. The act

[Merrimac Mining Co. v. Levy.]

also speaks of the instalment called as "becoming due." This is language appropriate to an existing debt.

There is another consideration of much importance, tending to show that personal liability was contemplated. The articles of association, under the Mining Law, contemplated a substantial capital raised for a defined purpose. This was not only to carry out the avowed object of the corporation, but for the protection of its creditors. If the subscribers were not bound to pay for their stock, there is nothing more than a nominal capital. Certainly it was intended that creditors should have the security of a real capital to the extent of the sum named as the aggregate stock. But without saying more upon this subject, we refer to Carson v. The Arctic Mining Co., already cited, and to Hartford & New Haven Railroad Co. v. Kennedy, 12 Conn. 499. In the latter case a subscription to the stock of a railroad company in these words, " we do hereby subscribe to the stock of the said railroad the number of shares annexed to our names respectively, on the terms, conditions and limitations mentioned" in the resolutions of the General Assembly incorporating the company, was held to amount to an assumption to pay instalments as called, and this though the resolutions did not declare there should be any personal liability, but provided that the stock might be sold for unpaid requisitions. See also 16 Conn. 593. But if the original subscriber is personally liable for instalments on his subscription called while he holds his stock, it is hard to see why a purchaser from him is not bound to pay instalments called for after he has succeeded to the place of his vendor. It would seem he must be substituted to the obligations of the original subscriber, as well as to his rights. He takes the stock subject to its liabilities, and being accepted by the corporation as a stockholder, a privity is established between them. Such seems to be the doctrine of most of the authorities: Huddersfield Canal Co. v. Buckley, 7 Term R. 36; 6 Harris & Johnson 123; Bend v. The Susquehanna Bridge Co.; Hartford & New Haven Railroad Co. v. Bowman, 12 Conn. 530; and the recent Michigan case, Merrimac Mining Co. v. Bagley.

It is argued, however, that the past decisions of this court show the law to be otherwise with us, and we are referred to Canal Co. v. Sansom, 1 Binn. 70. The main thing decided in that case, however, was that a declaration in the act incorporating a canal company that if required instalments on the stock were not paid as called, the stock should be forfeited to the company and sold by them, did not prevent the company from maintaining a suit against the defaulting stockholder, on his promise to pay, and that though it was provided his stock should be absolutely lost to him by forfeiture. It is true, a question was also raised respecting the liability of a stockholder for instalments on stock for which he

[Merrimac Mining Co. *v.* Levy.]

had not subscribed, but of which he had become a transferee, and the court (two judges present) simply remarked those shares stood on different ground, and that he had given no express promise to pay, and that the act had made no other provision than that the shares should be subject to the payments. But it appears that the obligation of the transferee was not pressed—it was given up.

Palmer *v.* The Ridge Mining Co. is also cited; it is found in 10 Casey 288. It certainly does bear a strong resemblance in many of its features to the present case. The decision was rested upon Canal Company *v.* Sansom, which, as we have seen, was not contested, so far, as respects the point now under consideration. What the provisions of the act incorporating the Ridge Mining Company were respecting the liability of subscribers to stock, the report does not inform us.

Under the by-laws there was a power in the directors to declare the stock forfeited. It must be admitted, however, that there is no substantial difference apparent between that case and this. It must be held to determine the law of the precise facts then before the court. But here we have a company chartered under another law, and a law which has received a construction from the tribunal of last resort.in the state that made it. In determining the duties and obligations of stockholders in this company, we think we ought to be guided by the ruling of the Michigan court. If we are not, this anomaly will be produced: some stockholders will be bound to pay instalments called, and others standing in the same condition will not. Such a state of things would be unjust to those who are obliged to pay, and unjust to the creditors, if any, of the corporation. As this is a Michigan charter, existing only under the laws of that state, the decisions of Michigan courts are the best evidence of the rights and duties of stockholders under it.

> Judgment reversed, and judgment for the plaintiff for $190 00